IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**DAMIEN ORLANDO RODGERS,**
        **Petitioner,**

**v.**                                                    **Case No.  3:11cv197/LAC/MD**

**KENNETH S. TUCKER,**
        **Respondent.**

_____

## REPORT AND RECOMMENDATION

        This case is before the court on Damien Orlando Rodgers' ("Mr. Rodgers")
April 22, 2011 petition for habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).
Respondent filed an answer (doc. 19) and relevant portions of the state court record
(docs. 20 and 21).  The matter was referred to the undersigned magistrate judge for
report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).
After careful consideration of all issues raised by petitioner, it is the opinion of the
undersigned that no evidentiary hearing is required for the disposition of this matter,
Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District
Courts.  It is further the opinion of the undersigned that the pleadings and
attachments before the court show that Mr. Rodgers is not entitled to relief, and the
petition should be denied.


## BACKGROUND AND PROCEDURAL HISTORY

        On October 28, 2004, Mr. Rodgers was charged with count 1 burglary of
dwelling with assault or battery, and count 2 attempted second degree felony murder
in violation of Sections 810.02 and 782.051(3) respectively, Florida Statutes, in the

Circuit Court of Escambia County, Florida in case number 1704CF4253A-D (doc. 20-1, p. 45)[1].  On April 20, 2005, Mr. Rodgers was found guilty by a jury of burglary with assault or battery, and of aggravated battery (doc. 20-1, p. 56).  On July 26, 2005, the court sentenced him as a prison releasee reoffender to life in prison for count 1 and a concurrent term of 15 years for count 2, with 311 credit days (doc. 20-2, pp. 17-20).  On June 1, 2006, Mr. Rodgers filed a motion to correct sentencing error pursuant to Rule 3.800, Florida Rules of Criminal Procedure, which was denied (doc. 20-7, pp. 25-74 and doc. 20-8, pp. 1-23).

On November 6, 2006, Mr. Rodgers directly appealed his conviction and sentence to the Florida First District Court of Appeal ("First DCA") (doc. 20-8, pp. 26-74 and doc. 21-1, pp. 1-5).  He raised four issues in his initial brief:  (1) "Trial court erred by either granting a partial judgment of acquittal or allowing the state to amend the information as to count II when the state wholly failed to charge a crime in that count and the change was highly prejudicial to the appellant;" (2) "The trial court erred when it sentenced appellant for aggravated battery where the jury merely found him guilty of aggravated battery but did not find any factor which increased the charge of battery to the higher offense;" (3) "Trial counsel was ineffective on the face of the record and this court should reverse for a new trial;" and (4) "The trial court erred fundamentally when it gave the forcible felony exception jury instruction as this negated appellant's sole defense of justifiable use of force to defend Ms. Vanderhall and his child."  Doc. 20-8, p. 27.  On October 10, 2007, the First DCA issued an opinion affirming Mr. Rodgers' conviction on count 1, but reversing his

---

[1]Respondent's counsel seems to not understand the requirements of CM/ECF filing.  Instead of filing each exhibit separately, he has filed them together without any label as to each (merely naming each document "Exhibit" fails to help matters).  He also has filed the exhibits in two separate document numbers (doc. 20 and doc. 21) confusing the record even more.  The court hereby warns that future filings must comply with the Local Rules and this type of disorganized filings will not be tolerated.  In the future, the court will mandate re-filing of all exhibits in an orderly fashion and with the proper identification (for example Exhibit A, Exhibit B, etc.).

conviction as to count 2 (doc. 21-2, pp. 2-7).   The trial court vacated count 2's judgment and sentence on November 16, 2007 (doc. 21-7, p. 46).

On January 8, 2008, Mr. Rodgers filed a *pro se* motion for post-conviction relief in the trial court pursuant to Rule 3.850, Florida Rules of Criminal Procedure (doc. 21-2, pp. 29-74).  He also filed a motion requesting an evidentiary hearing and for appointment of counsel (doc. 21-2, pp. 75-80).  In his Rule 3.850 motion, he asserted four claims of ineffective assistance of counsel (doc. 21-2, pp. 30-31).  After several other filings by the parties, on July 9, 2008, Mr. Rodgers filed a supplemental post-conviction motion under Rule 3.850 asserting an additional ineffective assistance of counsel claim (doc. 21-5, pp. 35-40).  On February 10, 2009, the Rule 3.850 court denied Mr. Rodgers' motion and supplemental motion in a written opinion (doc. 21-5, pp. 50-59).  On February 24, 2009, the Rule 3.850 court dismissed as moot Mr. Rodgers' motion requesting an evidentiary hearing and appointment of counsel (doc. 21-6, p. 31).  Mr. Rodgers appealed to the First DCA (doc. 21-6, pp. 36-80), and on August 18, 2009, the First DCA *per curiam* affirmed the Rule 3.850 court's denial of post-conviction relief (doc. 21-7, p. 5).  Mr. Rodgers filed a motion for rehearing and clarification with the First DCA on September 19, 2009 (doc. 21-6, pp. 86-95 and doc. 21-7, pp. 1-3), which was denied (doc. 21-6, p. 85).  Mandate issued on October 15, 2009 (doc. 21-7, p. 7).

On December 9, 2009, Mr. Rodgers filed a *pro se* "Motion to Correct Illegal Sentence" pursuant to Rule 3.800(a), Florida Rules of Criminal Procedure alleging his conviction did not qualify him for enhanced sentencing under the prison releasee reoffender statute (doc. 21-7, pp. 30-35).  The state court denied the motion in an order dated March 31, 2010 (doc. 21-7, pp. 36-37).  Mr. Rodgers appealed to the First DCA, which affirmed the trial court without issuing an opinion on August 5, 2010 (doc. 21-7, p. 52).  Mandate issued on August 31, 2010 (doc. 21-7, p. 54).

Mr. Rodgers filed the instant petition for federal writ of habeas corpus on April 26, 2011 (doc. 1), and respondent concedes its timeliness (doc. 19, p. 4).

## STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19 (1996).  In relevant part, Section 2254 provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006).

The Supreme Court explained the framework for Section 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  Section 2254(d)(2) must be divided into two separate inquiries:

---

[2] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412–13 (O'Connor, J., concurring). The federal habeas court "determining whether [it] should overturn the state courts' [sic] rejection of the claim at issue" should "review the highest state court decision disposing of the claim." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1237 (11th Cir. 2011); *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 173 L. Ed. 2d 251(2009).

Following the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when the Supreme Court's holding embodies the legal principle; dicta in opinions is not controlling. *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010). Furthermore, a federal court of appeals decision, "even a holding directly on point," cannot clearly establish federal law for Section 2254 purposes. *Bowles*, 608 F.3d at 1316 (citing *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1866, 176 L. Ed. 2d 678 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is "contrary to" clearly established Supreme Court case law, either because the state court "applies a rule that contradicts the governing law

set forth in [Supreme Court] cases," or because it "confronts a set of facts that is materially indistinguishable from a decision of [the] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 161 L. Ed. 2d 334 (2005); *see* 28 U.S.C. § 2254(d)(1).  The state court does not need to cite to Supreme Court cases or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of petitioner's claim.

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 412–13.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record the court had before it.  *Williams*, 529 U.S. at 409; *see Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1400, 179 L. Ed. 2d 557 (2011) (holding new evidence introduced in federal habeas court has no bearing on Section 2254(d)(1) review, rejecting dicta in *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam)).  A state court's application of federal law is objectively unreasonable when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Brown*, 544 U.S. at 141.  However, a state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause.  *Knowles*, 556 U.S. at 261.  Notably, even a state court's incorrect application of law will not

warrant federal habeas relief unless it is also objectively unreasonable.  *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the Supreme Court applies the "objectively unreasonable" test to the state court's factual determination. *Miller-El v. Cockrell*, 537 U.S. 322, 324, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (dictum).  Petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); 28 U.S.C. § 2254(e)(1).

The Eleventh Circuit in *Gill* clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  *Id.* at 1288-89.  Mr. Gill's petition alleged he was denied his Sixth Amendment right to counsel.[3]  *Id.* at 1288.  The Eleventh Circuit granted a limited Certificate of Appealability to determine the precise issue of the validity of "summary

---

[3]  Mr. Gill twice moved the trial court in pretrial hearings to allow him to waive his Sixth Amendment right to counsel.  *Gill*, 633 F.3d at 1275-84; U.S. Const. amend. VI.  The trial court denied the first motion concluding that Mr. Gill's waiver of counsel was not knowing and intelligent. *Gill*, 633 F.3d at 1278; *see Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (accused must "knowingly and intelligently" waive representation).  The trial court also denied the second motion, but allowed Mr. Gill to act as co-counsel for himself only for determining trial strategy. *Gill*, 633 F.3d at 1284. After Mr. Gill was convicted and timely requested post-conviction relief, the Florida Second District Court of Appeal ("Second DCA") affirmed without opinion the trial court's denial of said relief. *Id.* at 1284-85.  Mr. Gill then filed a petition in federal court, which the district court denied with prejudice. *Id.*

affirmance by a state appellate court of a trial court's decision based on potentially flawed reasoning." *Id.* at 1286.[4]

The *Gill* court acknowledged the well-settled principle that summary affirmances, such as the Second DCA's, are presumed adjudicated on the merits and warrant deference. *Id.* at 1288 (citing *Harrington*, 131 S. Ct. at 784-85 and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id.* at 1291 (citing *Harrington*, 131 S. Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244-45 (5th Cir. 2002) (summarizing the emerging circuit split)). The Eleventh Circuit in *Gill* concluded that district courts must apply the plain language of Section 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291 (agreeing with the Fifth Circuit court in

---

[4] The Eleventh Circuit reviewed Mr. Gill's claims that the district court erred in its habeas corpus analysis as to two issues. First, Mr. Gill argued that the habeas court erred by "failing to review on the merits the 'legally and factually unsupported rationale' articulated by the state trial court." *Gill*, 633 F.3d at 1288. Second, Mr. Gill argued the habeas court's decision was *per se* erroneous because it "relied on a finding that the state court did not make." *Id.* Specifically, Mr. Gill averred that the trial court denied relief by finding that his Sixth Amendment waiver was not knowing and intelligent, while the federal district court denied relief by finding that he "never clearly and unequivocally" waived his right to counsel. *Id.*

*Neal*, 286 F.3d at 244-45).   In short, the Eleventh Circuit held that "the statutory language focuses on the result, not on the reasoning that led to the result."  *Id.*[5]

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it.  *Id.* at 1292.  A federal habeas court can consider the full record before it in order to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Lockyer*, 538 U.S. at 64; *Gill*, 133 F.3d at 1290.

The Supreme Court recently summarized the meaning and function of habeas corpus in the federal system:

> Under §2254, a habeas court must determine what arguments or theories supported or . . . could have supported [ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of this Court.

*Harrington,* 131 S. Ct. at 786.  Federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's conclusion."  *Id.* (internal quotations omitted)

The federal habeas court will take the final step of conducting an independent review of the merits of petitioner's claims only if it finds that petitioner satisfied AEDPA and Section 2254(d).  *See Panetti v. Quarterman*, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).  The writ will not issue unless petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  When performing its review under Section

---

[5] Applying this analysis, the Eleventh Circuit rejected Mr. Gill's claim that the district court erred by relying on different grounds than the trial court because Mr. Gill's basic premise—the Second DCA's summary affirmance relied on the trial court's statements from the bench—was not dispositive. *Id.* at 1288.

2254(d), the federal court must resolve all claims for relief regardless of whether habeas relief is granted or denied.  *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (en banc); *see also Puiatti v. McNeil*, 626 F.3d 1283, 1307 (11th Cir. 2010).   The federal court must also bear in mind that state court factual determinations are presumed to be correct, and petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002) (AEDPA provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson v. Anderson*, 112 F.3d 823, 824-25 (noting petitioner has heavier burden to overcome the presumption of factual correctness).  "If this standard is difficult to meet, that is because it was meant to be."  *Harrington*, 131 S. Ct. at 786.


## OTHER CONTROLLING LEGAL PRINCIPLES


### Ineffective assistance of counsel


Petitioner contends in his grounds for relief before this court that he was denied his constitutional right to the effective assistance of counsel.   The Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right. . .to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  To prevail on a claim of ineffective assistance of counsel, petitioner must prove that:   (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 677-78, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *see also Berghuis v. Thompkins*, __ U.S. __, 130 S. Ct. 2250, 2264-65, 176 L. Ed. 2d 1098 (2010).  Reasonableness of representation does not implicate what is

possible, prudent, or even appropriate, but only what is "constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 97 L. Ed. 2d 638 (1987)).

In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler*, 218 F.3d at 1314. Courts must make "every effort. . .to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Chandler*, 218 F.3d at 1314 (the *Strickland* standard compels courts to "avoid second-guessing counsel's performance"). The Eleventh Circuit has summarized the standard and the burden:

> Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioner's to bear, is and is supposed to be a heavy one. And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial . . . worked adequately." *See White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992). Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see also Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (the test is not whether counsel could have done more); *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) (". . .the Constitution requires a good deal less than maximum performance.")

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693; *see also Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1305 (11th Cir. 2005). Petitioner must show a reasonable probability exists that the outcome would have

been different.  *Frazier v. Bouchard*, 661 F.3d 519, 532 (11th Cir. 2011); *Marquard*, 429 F.3d at 1305 (petitioner's burden under the prejudice prong is high); *Strickland*, 466 U.S. at 694.   In applying *Strickland*, the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697 ("If  it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . .that course should be followed.").

The *Strickland* standard exists to prevent petitioners from abusing the post-trial process by escaping rules of waiver or presenting new issues; it should be "applied with scrupulous care" to protect the integrity of the adversary process. *Harrington*, 131 S. Ct. at 788.   As it relates to habeas corpus applications, the Supreme Court emphasized:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted); *Knowles*, 556 U.S. at 262 (*Strickland* claims evaluated under § 2254(d)(1) require "doubly deferential" judicial review).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "'The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable, [which] is different from asking whether defense counsel's performance fell below *Strickland*'s standard.'"  *Jones v. Sec'y, Dep't of Corr.*, 644 F.3d 1206, 1209 (11th Cir. 2011)

(quoting *Harrington*, 131 S. Ct. at 785)*.*  Habeas claims of ineffective assistance of counsel require "doubly deferential" judicial review under Section 2254(d) and *Strickland*, and petitioners only rarely prevail on this ground.  *See Rogers*, 13 F.3d at 386.

## Exhaustion of state remedies and procedural default

A petitioner defaults on an issue unless the petitioner first exhausts available state court remedies so the state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (per curiam); *see* 28 U.S.C. § 2254(b)(1)(A) (applicant must exhaust available state court remedies); 28 U.S.C. § 2254(b)(3) (state may rely on exhaustion requirement unless it expressly waives the right). *But see* 28 U.S.C. § 2254(b)(2) (application may be denied on the merits even when applicant fails to exhaust state remedies).  To satisfy the exhaustion requirement, petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  *Duncan*, 513 U.S. at 365-66; *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999) (same).  This affords the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.

"Fair presentation" requires that, in each claim for relief, petitioner include a reference to a specific federal constitutional guarantee and a statement of the facts that entitle petitioner to relief.  *Picard v. Connor*, 404 U.S. 270, 278, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971).  To satisfy the exhaustion requirement, petitioner must present the same facts and claims in state court about which he petitions the federal court.  *Id.*  Appeals to a broad, general constitutional guarantee also fail to present the

"substance" of such a claim to the state court. *See Anderson v. Harless*, 459 U.S. 4, 7, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982) (petitioner cited federal authority only by referring to a state court decision in which "the defendant. . . asserted a broad federal due process right to jury instructions that properly explain state law" (internal quotation marks omitted)).  A state prisoner's claim is not fairly presented if the state court "must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material. . .." *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004).  However, when a petitioner squarely raises a federal constitutional claim in state court, the "failure of a state court to mention a federal claim does not mean the claim was not presented to it."  *Dye v. Hofbauer*, 546 U.S. 1, 3, 126 S. Ct. 5, 163 L. Ed. 2d 1 (2005). And, simply labeling the claim "federal" may be sufficient to fairly present the claim. *Baldwin*, 541 U.S. at 32 (dictum)*.*

The Eleventh Circuit requires specific reference to the United States Constitution and favors citations to federal cases.  *Zeigler v. Crosby*, 345 F.3d 1300, 1307-08 and n.5 (11th Cir. 2003) ("Cursory and conclusional sentences (unaccompanied by citations to federal law) . . . did not present to the Florida courts the federal claim asserted to us.").  This stricter standard requires petitioner to differentiate a claim under the United States Constitution from one under a state constitution.  *Id.* at n.5; *McNair v. Hall*, 416 F.3d 1291, 1302-03 (11th Cir. 2005) ("a habeas applicant [must] do more than scatter some makeshift needles in the haystack of the state court record" (internal citations omitted)).  If state and federal constitutional law overlap in their applicability to petitioner's claim, he must raise his issue in terms of the federal right in state court to obtain federal review of the issue. *Duncan*, 513 U.S. at 366; *see also Anderson*, 459 U.S. at 7 and n.3 (petitioner's citation to a state-court decision predicated solely on state law is probably

insufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited state case advanced a federal claim).

A claim is procedurally defaulted and barred from federal review in two instances: (1) if it was raised in state court and rejected on the independent and adequate state ground of procedural bar or default; or (2) if it was not properly raised in state court and can no longer be litigated under state procedural rules. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *see also Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (state court's rejection of petitioner's constitutional claim on state procedural grounds generally precludes subsequent federal habeas review of that claim).  Unless the federal court determines the state court "clearly and expressly" relied on independent and adequate state grounds, the federal court may address the petition.[6]  *Coleman*, 501 U.S. at 735.  However, when any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, the default is *per se* adequate state grounds independent of the federal question.  *Id.* at 735 n.1; *Harris v. Reed*, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989) (federal habeas court need not require a federal claim be presented to a state court if the state court would hold the claim procedurally barred).

The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee*, 534 U.S. at 375.  To foreclose federal review, the state procedural bar must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991).  A state procedural bar is firmly established and regularly followed when the state has put litigants on notice of the

---

[6]  The "adequate and independent state grounds" rule applies equally to procedural and substantive state-law grounds.  *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

rule, and the state has a legitimate interest in the rule's enforcement.  *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006)*.*

To overcome a procedural default so that the federal habeas court may reach the merits of a claim, petitioner must show either "cause for the default and actual prejudice resulting therefrom," or a fundamental miscarriage of justice.  *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004); *High v. Head*, 209 F.3d 1257, 1261 (11th Cir. 2000).  Cause exists when an external impediment, such as governmental interference or the reasonable unavailability of the factual basis for the claim prevented petitioner from raising the claim.  *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (superseded by AEDPA statute, but holding is still good law as cited and followed by the Eleventh Circuit in *High*, 209 F.3d at 1262-63).  Recently the Supreme Court found cause due to petitioner's out-of-state counsel, who were on record as representing him in post-conviction proceedings, abandoned him without leave of court, without informing him they could no longer represent him, and without securing any recorded substitution of counsel.  *Maples v. Thomas*, --- S. Ct.---, 2012 WL 125438, *14 (January 18, 2012).  Therefore, petitioner had no knowledge that his time to appeal had lapsed, and showed ample cause to excuse the procedural default.  *Id*.

To meet the miscarriage of justice exception, petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" because "it is more likely than not that no reasonable juror would have convicted him."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) (superseded by AEDPA statute, but holding is still good law as cited and followed by the Eleventh Circuit in *High*, 209 F.3d at 1270).  Further:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*  In short, actual innocence claims opening the gate for the miscarriage of justice exception are summarily rejected in virtually every case.  *Id.*

## Deference to state court findings of fact

Federal habeas courts defer to the state court's findings of fact, unless petitioner shows by clear and convincing evidence that it was unreasonable.  *See* 28 U.S.C. § 2254(d)(2); 28 U.S.C. § 2254(e)(1); *Callahan v. Hall*, 427 F.3d 897, 926 (11th Cir. 2005) (quoting the statute's language) ("[Section] 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'").  Under the AEDPA, the state court does not have to explicitly state its findings of fact.  *See Blankenship v. Hall*, 542 F.3d 1253, 1271-72 (11th Cir. 2008).  State court findings of fact can be implied from the opinion and the record when they are necessary to the Rule 3.850 court's rejection of a petitioner's claim.  *Id.*  These implicit findings are entitled to deference.  *Id.*  As explained in the Standard of Review, *supra*, the state court is not required to cite or be aware of the relevant Supreme Court precedent as long as its conclusion is not contradictory.  *Early*, 537 U.S. at 8.  A summary adjudication with a brief, or total lack of, statement of reasons is still an adjudication on the merits.  *Harrington*, 131 S. Ct. at 780, 784; *see Childers v. Floyd*, 642 F.3d 953, 968 (11th Cir. 2011) ("an 'adjudication on the merits' is best defined as any state court decision that does not rest solely on a state procedural bar.")

Under Eleventh Circuit precedent, the habeas court will "'look through' a summary decision to the 'last reasoned decision' on the issue."  *McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1262 n.12 (11th Cir. 2009) (quoting *Sweet v. Sec'y,*

*Dep't of Corr.*, 467 F.3d 1311, 1317 (11th Cir. 2006)); *see also Ylst v. Nunnemaker*, **501 U.S. 797, 802, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991) (quoting** *Coleman***, 501 U.S. at 740) (the** *Harris* **presumption only applies after the habeas court determines that "'the relevant state court decision. . .fairly appear[s] to rest primarily on federal law or [is] interwoven with [federal] law.'")**

## PETITIONER'S GROUNDS FOR RELIEF

## I.    MERITS

**Ground 1    Defense counsel performed ineffectively by failing to fully advise Mr. Rodgers of the strength of the state's case against him when the state offered him a 7-year sentence to plead guilty, and the trial court erred in failing to grant an evidentiary hearing on this claim.**

Mr. Rodgers avers that his counsel failed to inform him that the defense planned as to the burglary charge would not be reasonable (doc. 1, pp. 6-7).  He claims that he was unable to claim self-defense and justifiable use of force to the aggravating element of the burglary charge.  *Id.*  Mr. Rodgers alleges that had he been advised correctly by his counsel, that he was facing a life sentence under the prison releasee reoffender statute (Section 775.082 of the Florida Statutes); then he would have accepted the state's plea offer of seven years instead of pursuing a risky trial.  *Id.*  He contends that the Rule 3.850 court erroneously determined that no plea offer was ever tendered based solely on the state's pleading.  *Id*.

Mr. Rodgers presented this claim as Ground D in his Rule 3.850 motion (doc. 21-2, pp. 31-41, 68-74).  He also mentioned this claim in his direct appeal to the First DCA (doc. 20-8, pp. 69).

**State Court Decision**

The First DCA issued an opinion affirming Mr. Rodgers' conviction and sentence as to count 1, burglary of a dwelling with assault or battery, but did not address this claim specifically (doc. 21-2, pp. 2-7).  The Rule 3.850 court did not hold a hearing, and decided that no plea offer was pending (doc. 21-5, pp. 57-58).  It determined that there had been negotiations, "but no agreement satisfactory to both sides was reached."  *Id*. at 58.  Moreover, the Rule 3.850 court found that Mr. Rodgers' defense counsel presented a reasonable defense to the burglary charge: "lack of the essential element of intent."  *Id*.  Therefore, it concluded that Mr. Rodgers did not prove that defense counsel was deficient.  *Id*.

**Federal Review of State Court Decision**

**A.      Defense for Burglary Charge**

The trial court determined that Mr. Rodgers' counsel presented a reasonable defense as to the burglary charge- that Mr. Rodgers did not have the requisite intent (doc. 21-5, p. 58).  This is supported by the record.  Mr. Rodgers' defense counsel called Ms. Vanderhall to testify, and she confirmed that at the time Mr. Rodgers arrived at her apartment she was having a disagreement with Mr. Clemmons, which was loud enough to be heard outside her front door (doc. 20-5, p. 14).  Mr. Rodgers then took the stand and testified that he has a little girl with Ms. Vanderhall.  *Id*. at 30. He explained that on the night of the incident he had called Ms. Vanderhall to tell her that he was bringing her some money.  *Id*. at 32.  When he arrived, he knocked on the door and heard a bunch of commotion and arguing.  *Id*.  Ms. Vanderhall told him to leave, and he was about to but he heard something drop.  *Id*.  He went back to the door and heard a male voice and continued arguing.  *Id*. at 33.  He heard Ms. Vanderhall say "you better stop" and reacted by kicking in the door.  *Id*.  Mr. Rodgers

explained that he thought somebody was trying to hurt her or one of his children. *Id*. at 33 and 42.

What defense to pursue is clearly a strategy decision.  "By 'strategy,' [courts] mean no more than this concept:  trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client."  *Chandler*, 218 F.3d at 1314 n.14.  Matters of trial strategy and tactics, unless plainly not within the bounds of reasonableness, and even if unsuccessful, do not constitute ineffective assistance.  *Id.* at 1316 n.16.  But not every strategic decision passes constitutional muster.  Whether a particular decision by counsel was a tactical one is a question of fact, *Hardwick v. Crosby*, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1); *Jackson v. Herring*, 42 F.3d 1350, 1367 (11th Cir. 1995); *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991).  Whether a particular tactical decision was a reasonable one, however, is a question of law, *Hardwick,* 320 F.3d  at 1163; *Jackson*, 42 F.3d at 1367; *Horton*, 941 F.2d at 1462, and habeas relief is mandated only where the trial court's decision was either contrary to, or an objectively unreasonable application of, clearly established Supreme Court precedent, 28 U.S.C. § 2254(d)(1).

Mr. Rodgers' counsel decision to demonstrate Mr. Rodgers' lack of intent as to the burglary charge was reasonable and did not constitute ineffective assistance of counsel.   The state court's decision was not contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1)(2); *Williams,* 529 U.S. at 409.  Mr. Rodgers is not entitled to federal habeas relief, and the writ should not issue.

**B.**     **Plea offer**

In a very recent Supreme Court case, the High Court analyzed the *Strickland* standard in the context of plea agreements.  *Lafler v. Cooper*, - - - S. Ct. - - -, 2012 WL 932019 (March 21, 2012).  The defendant in *Lafler* was offered several plea offers but rejected them due to faulty legal advice by his counsel.  *Lafler*, - - - S. Ct. - - -, 2012 WL 932019, *4. He then went to trial, was convicted, and asserted ineffective assistance of counsel claims in a federal habeas petition.  *Id*.  The Supreme Court explained that, under the Sixth Amendment, defendants are entitled to effective assistance of competent counsel during plea negotiations.  *Lafler*, - - - S. Ct. - - -, 2012 WL 932019, *5.   Since respondent conceded that the performance of defendant's counsel was deficient, the analysis turned to whether the defendant suffered prejudice under *Strickland*.  *Id*.

In order to establish prejudice under *Strickland*, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, - - - S. Ct. - - -, 2012 WL 932019, *5.  Since the defendant in *Lafler* rejected the plea offers and chose to go to trial, the Supreme Court held that he had to establish that:

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under judgment and sentence that in fact were imposed.

*Id*.

**The High Court reasoned that:**

**If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.**

*Id*. at *8.

However, "[i]f no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise." *Id*.  That is the case here.  Even though Mr. Rodgers alleges that he received a plea offer of 7 years, he has not proffered any evidence of said plea.  In fact, in his Rule 3.850 motion Mr. Rodgers stated:

**Movant freely admits that he desired to proceed to trial.  Of course, Movant really had no choice in the matter, because, up until the morning trial was to began, the State had made no plea offer (doc. 21-2, p. 72)**

**His counsel testified during sentencing that he attempted to reach a plea deal with prosecutors on the morning of the trial, but was unsuccessful (doc. 20-1, pp. 61-62). The state denies there being an outstanding plea offer of 7 years (doc. 21-1, p. 41). The record also shows that Mr. Rodgers insisted on going to trial despite being advised by his counsel not to waive the conflict of interest found on the eve of trial (doc. 20-3, pp. 46-50 and doc. 20-1, pp. 62-63, 67).  At that point his defense counsel requested the court to provide Mr. Rodgers an unconflicted counsel to advise him, and the court did so (doc. 20-3, pp. 51-62 and doc. 20-1, p. 63).  Mr. Rodgers still insisted on going to trial.  *Id*.  Mr. Rodgers cannot now argue that his defense counsel's performance was deficient when there was no plea offer and when he refused to follow his recommendation to continue the trial, which may have allowed for further negotiations with the state possibly resulting in a plea deal.**

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence

presented.  28 U.S.C. § 2254(d)(1)(2); *Williams,* 529 U.S. at 409.  Mr. Rodgers is not entitled to federal habeas relief, and the writ should not issue.

### C.    No Evidentiary Hearing

Mr. Rodgers alleges that the trial court erred in failing to grant an evidentiary hearing on this claim (doc. 1, p. 6).  Respondent contends that this argument was raised solely as a state law issue, and is thus unexhausted (doc. 19, p. 7).  This is actually an argument of a Due Process violation.

Due process violations during state post-conviction proceedings do not form the basis of habeas relief.  *See Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004).  The habeas statute permits federal courts to grant habeas relief to state prisoners on the ground that they are "in custody pursuant to the judgment of a State court" in violation of federal law.  28 U.S.C. § 2254(a).  State post-conviction proceedings are not the "judgment" that resulted in the prisoner's detention.  *See Carroll*, 574 F.3d at 1365 ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—i.e., the conviction itself . . . .").

Post-conviction proceedings are instead "civil in nature and are not part of the criminal proceeding itself."  *Pennsylvania v. Finley*, 481 U.S. 551, 556–57, 107 S. Ct. 1990, 1994, 95 L. Ed. 2d 539 (1987).  Therefore, procedural violations during state post-conviction proceedings are "issues unrelated to the cause of the petitioner's detention."  *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987).  As such, they cannot form the basis for habeas relief.  *See, e.g., Carroll*, 574 F.3d at 1365 (holding that a failure to hold an evidentiary hearing in a state post-conviction proceeding was not a basis for habeas relief); *In re Rutherford*, 437 F.3d 1125, 1127 (11th Cir. 2006) (finding insufficient for habeas relief the petitioner's claim that the state post-conviction court denied him due process by failing to provide mental health records of a person the petitioner alleged had actually committed the crime) (citation omitted); *Quince*, 360 F.3d at 1262 (rejecting a habeas petition, which alleged that

the state judge presiding over the petitioner's post-conviction hearing denied the petitioner due process by not recusing himself, because the claim did not relate to the petitioner's conviction).

The due process violation alleged by Mr. Rodgers occurred during state post-conviction proceedings, not during his criminal trial.  The process afforded Mr. Rodgers during that proceeding, had no bearing on the judgment that led to his conviction and sentence.  A writ of habeas corpus is not the proper remedy for this alleged wrong.

**Ground 2**     <u>Defense counsel was ineffective for failing to argue necessity as an affirmative defense and for failing to request jury instructions on that defense</u>

Mr. Rodgers alleges that his defense counsel was ineffective because he did not argue a necessity defense as to the burglary charge despite it being supported by his testimony and Ms. Vanderhall's testimony (doc. 1, p. 7).  He also avers that his defense counsel's failure to request jury instructions on that defense amounted to deficient performance.  *Id*.

Even though Mr. Rodgers included a claim for ineffective assistance of counsel in his direct appeal to the First DCA, he did not mention this claim (doc. 20-8, pp. 68-74).  Mr. Rodgers instead argued this claim in his Rule 3.850 motion as Ground A (doc. 21-2, pp. 45-56).


<u>State Court Decision</u>

The Rule 3.850 court determined that Mr. Rodgers' defense counsel presented a very similar defense to the necessity defense - lack of intent (doc. 21-5, pp. 52-54).  It explained that "[a] lack of intent to commit an offense upon entry is a complete defense to burglary."  *Id*. at 53.  The Rule 3.850 court cited the record where both Mr. Rodgers and his counsel reasoned to the jury that Mr. Rodgers "kicked in the door of Ms. Vanderhall in order to protect [her] and her children from what [Mr. Rodgers] perceived as a pending threat."  *Id*.  Mr. Rodgers' counsel then argued that burglary

was not committed because of the lack of intent, and even implied that to believe so "was rather absurd." *Id.* Therefore, it concluded that Mr. Rodgers did not prove that defense counsel was deficient because his counsel "pursued a defense nearly identical" to the necessity defense. *Id.* at 54.

As to the jury instruction, the Rule 3.850 court instructed the jury, as requested by Mr. Rodgers' counsel, that:

> Even though an unlawful entering a structure is proved, if the evidence does not establish that it was done with the intent to commit assault or battery, the defendant must be found not guilty.

*Id.* at 53-54 quoting doc. 20-5, p. 52 and 20-6, p. 34. The Rule 3.850 court held that Mr. Rodgers did not demonstrate that the result would have been different at trial had his counsel pursued a necessity defense or requested a necessity jury instruction. *Id.* at 54.

### Federal Review of State Court Decision

As discussed in detail above, this court owes deference to the state courts' rulings, and cannot disturb them so long as there was a "satisfactory conclusion." *Williams,* 529 U.S. at 410-12; *see also Crawford*, 311 F.3d at 1295 (explaining that AEDPA provides for a "highly deferential standard of review" for factual determinations made by a state court).

Mr. Rodgers asserts that counsel should have argued the affirmative defense of necessity and request a jury instruction as to that defense. He contends that his failure to do so constituted deficient performance. It was not. Counsel's performance was not deficient merely because it was not perfect.

> "[J]udicial scrutiny of counsel's performance must be highly deferential." Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . . In light of the "strong presumption in favor of competence," we have held that in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did

take."  *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002) (quoting *Strickland*, 466 U.S. at 687, 689-90 and *Chandler*, 218 F.3d at 1315).

*United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003).  In the context of this case, Mr. Rodgers must convince this court that *no other lawyer* would have advanced the lack of intent argument as opposed to the necessity one.  He has not.  A court must not second-guess counsel's strategy. *Waters*, 46 F.3d at 1518-19 (en banc).  Mr. Rodgers' counsel presented a reasonable defense to his burglary charge, but without success.  Mr. Rodgers failed to prove his trial counsel's performance was deficient or that he suffered prejudice.

The state court's ruling was not unreasonable under *Strickland*, did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1)(2); *Williams,* 529 U.S. at 409.  Mr. Rodgers is not entitled to federal habeas relief, and the writ should not issue.

**Ground 3**     **Defense counsel performed ineffectively by failing to object to the forcible felony exception jury instruction, which precluded a justifiable use of force defense to the battery element of the burglary charge.**

Mr. Rodgers argues that his trial counsel should have objected to the court's jury instruction on the forcible felony exception to self-defense and justifiable use of force because it assured his conviction on the aggravating element of the burglary charge (doc. 1, p. 8).  He contends that he was not charged with a separate forcible felony, and thus forcible felony jury instruction read to the jury was inappropriate (doc. 21-2, pp. 64-68 and pp. 87-88, doc. 21-3, pp. 1-4).  His defense counsel argued during trial that Mr. Rodgers forced his way into Ms. Vanderhall's apartment based on the reasonable need to protect her and her children (doc. 1, p. 8).  Therefore, Mr. Rodgers contends that at the very least his counsel should have requested a clarifying instruction so that the jury could excuse the forcible entry based upon the showing of reasonable need.  *Id*.  He concludes that as instructed,

the jury could not find him not guilty based on self-defense or justifiable use of force.  *Id*.

Mr. Rodgers argued this claim in his direct appeal to the First DCA while conceding that it was not preserved for appeal, but averring it is fundamental (doc. 21-1, pp. 1-4).  He also included it in his Rule 3.850 motion as Ground C (doc. 21-2, pp. 64-68 and pp. 87-88, doc. 21-3, pp. 1-4).

### State Court Decision

The First DCA issued an opinion reversing Mr. Rodgers' conviction as to count 2, aggravated battery (doc. 21-2, pp. 2-7).  In the same opinion, the First DCA affirmed Mr. Rodgers' conviction and sentence as to count 1, burglary of a dwelling with assault or battery, but did not discuss Mr. Rodgers' claims as to this charge.  *Id*.

The Rule 3.850 court determined that because Mr. Rodgers argued this in his direct appeal to the First DCA, then the issue was not properly before it (doc. 21-5, pp. 55-56).  However, it concluded that even if the issue was properly before it, Mr. Rodgers was not entitled to relief.  *Id*. at 56.  The Rule 3.850 court explained that:

> As a threshold issue, the jury had to find that [Mr. Rodgers] committed a burglary.  [Mr. Rodgers'] claim of self defense did not apply to the burglary. . . .[Mr. Rodgers'] defense to burglary was absence of the essential element, intent.  Next, as shown clearly by the verdict form, the jury had to decide whether [Mr. Rodgers] committed an assault or battery while he was in the apartment. [Mr. Rodgers'] self-defense claim was a defense to any assault or battery.  The forcible felony instruction informed the jury that if they found [Mr. Rodgers] guilty of *burglary*, self defense was no longer a valid defense to the *battery*.  Therefore, although the battery was an aggravator to the burglary, the two were in essence separate offenses with separate elements.  Each offense had to be found separately by the jury.

*Id*.  The court went on to hold that the forcible felony instruction was given properly regarding to the burglary because Mr. Rodgers was seeking to justify the battery with self-defense.  *Id*. at 57.  "The fact that the two were charged as a crime with an aggravator rather than two separate crimes does not change the analysis."  *Id*.

Lastly, it added that Mr. Rodgers' claims of prejudice are pure speculation because he could not establish that - had the forcible felony instruction not been given - the jury's verdict would have been different.  *Id.*


**Ground 4**    <u>Defense counsel performed ineffectively by failing to object to the forcible felony exception jury instruction because battery does not qualify as a forcible felony under Florida law.</u>

    Mr. Rodgers asserted this argument in his Supplemental Rule 3.850 Post-Conviction Motion as Ground E (doc. 21-5, pp. 35-39).  He alleges that simple battery does not include the use or threat of physical force or violence as a necessary element (doc. 1, pp. 8-9).  He then concludes that it does not qualify as a forcible felony and that the jury was given an erroneous instruction.  *Id.*


    <u>State Court Decision</u>

    The Rule 3.850 court explained that the forcible felony instruction was given in relation to the burglary offense, and not in relation to the battery (doc. 21-5, p. 58). It concluded that since burglary is listed in Section 776.08 of the Florida Statutes as a forcible felony, Mr. Rodgers was not entitled to relief on this claim.


    <u>Federal Review of State Court Decision on Grounds 3 and 4</u>

    Mr. Rodgers' arguments on Grounds 3 and 4 depend upon this court determining counsel's performance was deficient, but first this court would have to conclude that the state court misinterpreted state law.  In *Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338 (11th Cir. 2005) and *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005), the Eleventh Circuit addressed similar issues.  In *Herring*, the petitioner argued his counsel was ineffective for failing to make an objection, based on state law, to the introduction of non-statutory aggravating evidence at the penalty phase of his trial.  *Id.* at 1354-55.  The Florida Supreme Court concluded that the proposed objection would have been overruled and therefore counsel was not deficient.  *Id.*  The Eleventh Circuit held:  "The Florida Supreme Court already has

told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . .  It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Id.* (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Similarly, in *Callahan*, the petitioner contended his counsel was ineffective for failing to argue that, based on the Alabama state courts' interpretation of the Double Jeopardy Clause in three state court cases (*Hull v. State*, 607 So.2d 369 (Ala. Crim. App. 1992), *Ex parte Hergott*, 588 So.2d 911 (Ala. 1991), and  *Ex parte Callahan*, 471 So.2d 463 (Ala. 1985) (*Callahan I*)), the introduction of petitioner's statements at his second trial was precluded.  *Callahan*, 427 F.3d at 931-32.  The Alabama Court of Criminal Appeals concluded that the petitioner's claim relied on an erroneous interpretation of state law and rejected it.  *Id.* at 932.

The Eleventh Circuit held:

> [T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on *Callahan I*, *Hull*, and *Hergott* - the objection would have been overruled. *Callahan* [v. *State of Alabama*], 767 So.2d [380,] 386-87 [(Ala. Crim. App. 1999)] (*Callahan III*). Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.
>
> Moreover, we are convinced [petitioner] could not satisfy the prejudice prong of *Strickland*. [Petitioner's] ability to demonstrate prejudice is again foreclosed by the state court's decision in *Callahan III*.  Even if [petitioner's counsel] was ineffective for failing to make the objection, the state court has told us that if he did make the objection it would not have been successful. [Petitioner] cannot be prejudiced by his counsel's failure to make a losing objection.

*Id.*

Here, as in *Herring* and *Callahan*, the state courts have answered the question of what would have happened had Mr. Rodgers' counsel objected to the forcible felony jury instruction - the objection would have been overruled.  Therefore, his counsel cannot be faulted for having failed to make it.

**Section 776.041 of the Florida Statutes titled "Use of force by aggressor" provides that:**

> **The justification . . . is not available to a person who:**
>
> **(1) Is attempting to commit, committing, or escaping after the commission of, a forcible felony; or**
>
> **(2) Initially provokes the use of force against himself or herself, unless:**
>
> **(a) Such force is so great that the person reasonably believes that he or she is in imminent danger of death or great bodily harm and that he or she has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant; or**
>
> **(b) In good faith, the person withdraws from physical contact with the assailant and indicates clearly to the assailant that he or she desires to withdraw and terminate the use of force, but the assailant continues or resumes the use of force.**

**As explained by the Rule 3.850 court, Mr. Rodgers would have only been entitled to the self-defense instruction as to the battery portion of the charge. Therefore, since it was up to the jury to decide whether Mr. Rodgers was committing a forcible felony - the burglary part of the charge - then it was proper for the trial court to instruct the jury with the forcible felony exception pursuant to Section 776.041.  *See also Holland v. State of Florida*, 916 So.2d 750, 761 (2005) (Defense of self-defense is legally unavailable to a person who is attempting to commit, committing, or escaping from the commission of a forcible felony).**

**Mr. Rodgers argument in Ground 4 that battery does not qualify as a forcible felony under Florida law is also unavailing.  Section 776.08 of the Florida Statutes states:**

> **"Forcible felony" means treason; murder; manslaughter; sexual battery; carjacking; home-invasion robbery; robbery; <u>burglary</u>;**

arson; kidnapping; aggravated assault; aggravated battery; aggravated stalking; aircraft piracy; unlawful throwing, placing, or discharging of a destructive device or bomb; and any other felony which involves the use or threat of physical force or violence against any individual.

(emphasis added); *see also Marshall v. State of Florida*, 604 So.2d 799, 803 (1992) (Section 776.08, Florida Statutes, specifically defines forcible felony to include both burglary and aggravated battery).   The Rule 3.850 court explained that the forcible felony instruction was given in relation to the burglary, which is listed in Section 776.08.   Thus, no error can be claimed.

Since Mr. Rodgers' counsel would have failed had he acted as Mr. Rodgers now demands, he cannot show prejudice under *Strickland*.   Moreover, this court will not second-guess the state courts on their resolution of a state-law issue.   The state court's ruling was not unreasonable under *Strickland*, did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.   28 U.S.C. § 2254(d)(1)(2); *Williams,* 529 U.S. at 409.   Mr. Rodgers is not entitled to federal habeas relief, and the writ should not issue.

## II.   PROCEDURALLY DEFAULTED

**Ground 5**    Counsel was ineffective for failing to move for a continuance in order to take the deposition of Ms. Vanderhall before trial.

**Ground 6**    Counsel performed ineffectively by failing to seek a competency determination of Mr. Rodgers, who was unable to understand counsel's explanation of the case.

In Ground 5, Mr. Rodgers contends that Ms. Vanderhall was summoned but failed to appear for a deposition on March 9, 2005 (doc. 1, pp. 9-10).   He argues that his defense counsel did not file a motion requesting an order to show cause until the

day before the trial, April 19, 2005.  *Id*.  He alleges that no hearing was held regarding this motion until after the trial on June 8, 2005.  *Id*.  Mr. Rodgers asserts that instead of rescheduling the trial, the court had his defense counsel briefly question Ms. Vanderhall just before the trial began.  *Id*.  Afterwards, the court questioned Mr. Rodgers counsel whether the defense was ready to proceed and he responded affirmatively.  *Id*.  He alleges that his counsel admitted later that his defense was severely hampered because he was unable to properly cross-examine Ms. Vanderhall without a thorough deposition and transcript.  *Id*.

In Ground 6, Mr. Rodgers argues that his counsel expressed grave doubts as to his competency when he declined the plea offer (doc. 1, pp. 10-11).  Mr. Rodgers mentions, as an example, his confusion at the beginning of trial as to whether he would waive a conflict of interest issue with his defense counsel, which he did.  *Id.* He contends that his counsel was ineffective because he did not request an inquiry as to Mr. Rodgers' competency.  *Id*.

### State Court Decision

The First DCA issued an opinion affirming Mr. Rodgers' conviction and sentence as to count 1, burglary of a dwelling with assault or battery, but did not address these claims specifically (doc. 21-2, pp. 2-7).

### Federal Review of State Court Decision

Respondent contends that Grounds 5 and 6 were not presented in Mr. Rodgers' Rule 3.850 motions as required, thus they were abandoned (doc. 19, pp. 7-11).  The court agrees.  Mr. Rodgers asserted Grounds 5 and 6 in his direct appeal before the First DCA (doc. 20-8, pp. 68-74).   However, Mr. Rodgers essentially conceded, in his reply brief on direct appeal, that the appellate record was insufficient for him to successfully demonstrate that he was denied the effective assistance of counsel (doc. 21-1, p. 74).  In addition to Mr. Rodgers' concession, (1)

the ineffective assistance of counsel claim was not the proper subject of appellate review by the First DCA, (2) the First DCA did not address the claim in its written opinion, (3) Mr. Rodgers subsequently filed some of the same claims in his Rule 3.850 motion, (4) the Rule 3.850 court adjudicated those claims on the merits, and these facts all support the conclusion that the First DCA declined to address the ineffective assistance of counsel claim because the First DCA was not the proper forum.  Therefore, since Mr. Rodgers did not include Grounds 5 and 6 in his Rule 3.850 motion, even though he could have, they are procedurally defaulted.

Now, any further attempt at exhaustion in Florida courts would be futile because Mr. Rodgers' claims would be procedurally barred under Florida law.  *See Rodriquez v. State*, 919 So.2d 1252, 1262 n. 7 (Fla. 2005) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); *Smith v. State*, 445 So.2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.")  Moreover, Mr. Rodgers has made none of the requisite showings to excuse his default.  Grounds 5 and 6 are therefore barred from federal review by this court.  *Coleman*, 501 U.S. at 734-35 and n.1; *Bailey*, 172 F.3d at 1302-03; *Judd*, 250 F.3d at 1313.


**Ground 7**      **The trial court erred when it gave the forcible felony exception jury instruction because it negated Mr. Rodger's sole defense, which was that his use of force was justifiable and intended to defend his child, and his child's mother, Ms. Vanderhall.**


The trial court gave the jury the following forcible felony exception instruction:

> The use of force not likely to cause death or great bodily harm is not justifiable if you find No. 1, that Damien Rodgers was attempting to commit, committing or escaping after the commission of a burglary or No. 2, that Damien Rodgers initially provoked the use of force against himself unless the force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger other than using force not likely to cause death or

> **great bodily harm toward Kelvin Clemmons or in good faith the defendant withdrew from physical contact with Kelvin Clemmons and indicated clearly to Kelvin Clemmons that he wanted to withdrawal (sic) and stop the use of force not likely to cause death or great bodily harm but Kelvin Clemmons continued or resumed the use of force.**

(doc. 20-6, pp. 36-37).

Mr. Rodgers claims that the jury was essentially told that if he broke into Ms. Vanderhall's apartment, which constituted the burglary referred to in the instruction, then he could not be found to have used justifiable force (doc. 1, pp. 11-12).  Mr. Rodgers testified that he heard raised voices inside the apartment, and was concerned for the safety of his child and Ms. Vanderhall (doc.  20-5, p. 30-33).  Ms. Vanderhall admitted that she was arguing loudly when Mr. Rodgers arrived.  *Id.* at 14.  Mr. Rodgers argues that even though Ms. Vanderhall asked him to leave, he reasonably believed that Mr. Clemmons forced her to say that (doc. 1, p. 12).  He also avers that the only way to protect his child and Ms. Vanderhall was to enter the apartment by force.  *Id.*  Mr. Rodgers concludes that according to the jury instruction he could not have taken justifiable forcible action regardless of what he was confronted with inside the apartment.  *Id.*

### State Court Decision

The First DCA issued an opinion affirming Mr. Rodgers' conviction and sentence as to count 1, burglary of a dwelling with assault or battery, but did not address this claim specifically (doc. 21-2, pp. 2-7).

### Federal Review of State Court Decision

Respondent contends this claim is unexhausted because it does not cite any federal law cases or the U.S. Constitution (doc. 19, p. 11-14).  The court agrees. Since it was presented as a state law issue only, it is unreviewable in this habeas petition because Mr. Rodgers failed to present this claim fairly to the state court to put it on notice of its federal nature.  *Duncan*, 513 U.S. at 365-66.  Now, any further

attempt at exhaustion in Florida courts would be futile because Mr. Rodgers' claim would be procedurally barred under Florida law.  *See Rodriquez v. State*, 919 So.2d 1252, 1262 n. 7 (Fla. 2005) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); *Smith v. State*, 445 So.2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.")

Moreover, Mr. Rodgers has made none of the requisite showings to excuse his default.  He has not proffered any official impediment as the cause for his failure to fairly present this constitutional claim before the state courts.  Additionally, he has not presented the kind of new relevant evidence of innocence - not presented at trial - that would justify making a miscarriage of justice exception like in *Schlup,* 513 U.S. at 327.[7]  Thus, this claim is procedurally defaulted and barred from federal review by this court.  *Coleman*, 501 U.S. at 734-35 and n.1; *Bailey*, 172 F.3d at 1302-03; *Judd*, 250 F.3d at 1313.


## CONCLUSION

The undersigned has carefully reviewed the trial transcript, post-conviction motions, orders, records on appeal, and all submissions in this proceeding.  Mr. Rodgers' claims were either abandoned, procedurally defaulted, or are without merit. He is not entitled to federal habeas relief.


## CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district

---

[7]  The Supreme Court recently gave a specific example of the kind of new evidence necessary to excuse a procedural default.  *See House v. Bell*, 547 U.S. 518 (2006) (holding that there was sufficient evidence to allow the exception where there was new DNA evidence that contradicted the state's case; there was scientific evidence that the bloodstains upon which the state relied were the result of faulty evidence handling by law enforcement; there were new independent witnesses who credibly pointed to the likelihood that the murder was committed by someone else; and there was other evidence tending to negate the state's evidence).

court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Cases. A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is recommended that the court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If petitioner files an objection to this recommendation, he may bring this argument to the attention of the district judge in his objections.

Accordingly, it is respectfully RECOMMENDED:

1.      That the petition for writ of habeas corpus (doc. 1) challenging the conviction and sentence in *State of Florida v. Rodgers*, in the Circuit Court of Escambia County, Florida, case number 1704CF4253A-D, be DENIED and the clerk be directed to close the file.

2.      That a certificate of appealability be DENIED.

At Pensacola, Florida this 24th day of April, 2012.

/s/ *Miles Davis*

**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**